[Decided at PENDLETON July 31, 1897.]

## SMYTH v. NEAL.

(49 Pac. 850.)

1. WATERS—LOSS OF APPROPRIATION.—A landowner who makes an actual diversion of a certain quantity of water, and gives notice of an intended appropriation of a specific amount, is entitled to a reasonable time within which to make an actual application of all his intended appropriation to the contemplated useful purpose, but where he fails to use reasonable diligence, under the circumstances, for the accomplishment of such purpose he loses his initiative or inchoate appropriation, or so much thereof as he fails to utilize: *Nevada Ditch Company* v. *Bennett*, 30 Or. 59, applied.

2. INSUFFICIENCY OF ESTOPPEL.—Plaintiff, by making favorable representations to defendant of the desirability of his neighborhood for settlement, and by discussing methods for irrigation, and stating that he thought the supply of water from the creek was sufficient for them both, and making no objection to his use of water therefrom, is not estopped to claim a superior right to so much of the water as prior to and during all such time he had been using for beneficial purposes to the knowledge of defendant.

From Harney: MORTON D. CLIFFORD, Judge.

Suit by Darius H. Smyth against John H. Neal to enjoin the diversion and use of certain waters. Defendant had a decree, whereupon plaintiff appealed.

REVERSED.

For appellant there was a brief over the names of *Charles A. Sweek*, and *Cox, Cotton, Teal & Minor*, with oral arguments by *Messrs. Sweek* and *Lewis B. Cox*.

For respondent there was a brief and an oral argument by *Mr. Thornton Williams*.

Opinion by MR. JUSTICE WOLVERTON.

This suit was commenced in May, 1895, to restrain the defendant from diverting water from Smyth Creek, in Harney County, Oregon. The plaintiff claims a prior appropriation of all the water of the creek, and seeks to have his claim established by decree, and the defendant permanently enjoined from interfering in any manner with his use thereof. The defendant concedes that plaintiff is entitled to some use thereof, but claims by his answer an appropriation of one hundred and fifty inches prior in time and superior in right to that of plaintiff. The questions presented by the briefs and at the argument are: (1) What is the amount of plaintiff's appropriation? And (2) is he estopped to question any appropriation that defendant may have acquired?

In May, 1873, the plaintiff settled upon a pre-emption claim consisting of the southwest quarter of the northwest quarter of section one, the southeast quar-

ter of the northeast quarter and the east half of the southeast quarter of section two, township twenty-nine south, range thirty-three east, situate in Harney County, Oregon, and subsequently acquired title thereto from the general government.    In August, 1882, he settled upon a homestead consisting of the east half of the northeast quarter, and the northeast quarter of the southeast quarter of section eleven, and the northwest quarter of the southwest quarter of section twelve, in the same township, and received a patent therefor in August, 1888.    Smyth Creek is a perennial stream, flowing in its natural channel in a northerly direction through the northwest quarter of the southwest quarter of section twelve, and the southwest quarter of the northwest quarter of section one.    In 1876 the plaintiff constructed a dam in the creek, a short distance north of said northeast quarter of the southwest quarter of section twelve, upon the premises of G. C. Smyth, his father, and diverted a portion of the water by means of a small ditch, carrying it upon the north end of the east half of the northeast quarter of section eleven, thence upon and through his pre-emption claim.    In 1883 or 1884 the head of this ditch was changed to a point a little higher up on the stream, but the amount of the diversion was not increased.    It is impossible to determine from the evidence the quantity of water diverted by means of this ditch, but it is probable that not more than half the stream was ever so diverted. The plaintiff utilized water from Smyth Creek for irrigating wild grasses, which grow in sufficient abundance to be cut and cured for hay, ever since the construction of said dam and ditch,—some through the

ditch and laterals thereto, and some by damming the main stream and turning it into old channels, and damming these again and conducting it upon the meadows then covered by his pre-emption, and by the homestead subsequently acquired, by means of plow furrows and shallow lateral ditches, so constructed that the mower could be run over them without great inconvenience.

There is some conflict in the testimony touching the extent of these meadow lands. The plaintiff says they contain from one hundred and thirty to one hundred and forty acres; the defendant, one hundred and ten; while other witnesses estimate the area thereof at not more than eighty or ninety acres. From the whole, it is quite probable that one hundred and twenty acres is a fair estimate. Besides these meadow lands, plaintiff early began the cultivation and irrigation of grain and garden lands which theretofore were arid and covered with sagebrush, and reduced to cultivation and continuously irrigated for a number of years last past, according to his statement, about eighteen acres,—fifteen of grain and three of garden. Other witnesses vary in their estimates, some being higher and some others lower than the plaintiff's, but his statement we believe to be substantially correct. From plaintiff's case in chief, it is impossible to gather any definite idea touching the quantity of water needed or required for the irrigation of these lands. The defendant has, however, cured this defect, and from his testimony we are able to arrive at a fairly satisfactory conclusion. The witness Whiteside testifies to having had experience in the use of water

for the irrigation of wild meadow lands, and says, in effect, that one-half inch to the acre, if handled economically, would be sufficient for the purpose. This evidence is uncontradicted and unimpeached, and, from the intelligence of the witness, must be taken as a fair estimate. For the eighteen acres of grain and garden one inch to the acre is ample. The parties practically agree that wild grass irrigation ends about the middle of June. The defendant so testifies, and the plaintiff fixes that time in a proposition contained in the record for a decree to be entered in his favor, but grain and garden lands require irrigation for a much longer period. It seems to have been a conceded proposition that the use of water for the irrigation of these wild meadow lands was for a useful purpose, and that such irrigation was necessary for the production of grass in sufficient quantities to be gathered and cured as feed for stock. The plaintiff has other lands capable of cultivation and irrigation from Smyth Creek, but during all the time since his settlement upon his pre-emption and homestead claims he has not utilized any water for the irrigation thereof; nor do we understand that he has ever made any attempt at such additional use, unless the construction of his new dam still higher up on the stream in 1895, and the partial construction of a ditch from that point, may be construed into such a purpose. But by his testimony he expressly disclaims any purpose of the kind, or that he intended thereby to increase his previous appropriations.

1. We understand that where a party has made an actual diversion of a specific quantity of water, and

perhaps where he has given notice of an intended appropiation of a specific amount, he is entitled to a reasonable time within which to make an actual application of the whole of his intended appropriation to the contemplated useful purpose, using reasonable diligence, under the circumstances, for the accomplishment of such purpose, but that where he fails in such diligence he loses his initiative or inchoate appropriation, or so much thereof as he fails to put to a useful or needful purpose: *Nevada Ditch Company* v. *Bennett*, 30 Or. 59 (45 Pac. 472), and cases there cited. Plaintiff produced a notice at the trial, which appears to have been filed in the county clerk's office in 1882, whereby he claimed an appropriation of two hundred inches of the water of this stream for agricultural purposes, but has made no additional or other use of the water than he had made prior to that date, and can now claim nothing by reason of such notice. Under the conditions here ascertained and determined, and the law applicable thereto, we conclude that plaintiff has acquired a completed prior appropriation of seventy-five inches of water from Smyth Creek for and during the spring months, and until June 15, and eighteen inches thereafter.

2. But it is contended that he is estopped to assert this right by his acts and demeanor towards the defendant while he was reducing his lands to cultivation, and using water from the same stream for the purpose of their irrigation. The defendant's lands are located above those of plaintiff, as it respects Smyth Creek. He settled upon a pre-emption in 1885, and acquired title shortly after, and then settled upon

á homestead which adjoined the plaintiff's lands, and in due course acquired title to that. Subsequently he acquired title to a timber-culture claim and other lands. He began the use of water in 1886, and continued such use for irrigation until 1895, when he had in cultivation and utilized, for the production of timothy, alfalfa, grain, and vegetables, approximately one hundred acres. He also utilized water for the production of wild grass on other land, the acreage of which is not definitely fixed. Suffice it to say that the defendant has made some appropriation of the water of Smyth Creek, the quantity whereof we will not now undertake to determine, as it is not insisted upon by him, unless it be found that his right to the use of such water is superior to that of the plaintiff. Several years before the defendant settled upon Smyth Creek, the plaintiff attracted his attention to the locality by a favorable representation of the surroundings, grass, water supply, etc; and in September, 1895, at the time he settled there, the plaintiff accompanied him upon the lands, showed him the lines and section corners, and discussed to some extent the water supply, and was present or had direct knowledge touching the purchase by defendant of a prior pre-emption right, or of its relinquishment from the lands upon which the defendant then located his pre-emption and upon which he began the diversion and use of water. Plaintiff also at the time discussed somewhat with the defendant the better method to be adopted, by which irrigation would be advantageously employed. Thereafter plaintiff had full and complete knowledge of the valuable and extensive improvements the defendant was

making upon his lands,—that he was inclosing and breaking portions of them up, reducing them to cultivation, seeding them to alfalfa and timothy, and planting to grain and garden, and was constantly employing the waters of Smyth Creek for their irrigation, as well as for the irrigation of wild grasses for hay, through a system of ditches designed especially for advantageous and economic use. During all this time, and up to the spring of 1895, the plaintiff made no objections to the defendant's use or employment of the water, and upon one or two occasions told the defendant that he thought the supply by means of the creek was ample for both. In 1895, however, the supply in large part failed, so that there was not sufficient water for the needs of both parties. This was an unusual condition, and precipitated this suit.

Is there enough in all this, however, to constitute an estoppel in defendant's favor? It must be remembered that the plaintiff was also, during the same period of time, in the full enjoyment of his completed prior appropriation, of which the defendant was all the while fully cognizant. In *Boggs* v. *Mining Co.*, 14 Cal. 368, it was said, "There must be some degree of turpitude in the conduct of a party before a court of equity will estop him from the assertion of his title; the effect of the estoppel being to forfeit his property and transfer its enjoyment to another." These elements must concur, to constitute the estoppel for which defendant contends, viz.: He must have been destitute of knowledge of his own legal rights, and of the means of acquiring such knowledge; the plaintiff must have made some admission or done some act

with the intention of influencing the conduct of the defendant, or which he had reason to believe or the necessary tendency of which would be to so influence him, inconsistent with the assertion of title in himself; that the defendant has acted upon or been influenced by such demeanor; and that he will now be prejudiced by allowing the effect of such acts or admissions to be controverted: *Lux* v. *Haggin*, 69 Cal. 255, 266 (10 Pac. 674); *Anaheim Water Co.* v. *Semi-Tropic Water Co.*, 64 Cal. 185, 194, 195, (30 Pac. 623.)   The admissions, if they may be so termed, and conduct of the plaintiff, by which defendant claims to have been influenced to settle upon Smyth Creek, and his admissions, conduct, and demeanor during all the time between 1885 and 1895, were not calculated to delude or mislead the defendant, who had not only full cognizance of his own rights, but also had knowledge that plaintiff had been, anterior to his settlement, and was during all said time, employing a portion of the water of the stream for beneficial purposes.   Plaintiff's demeanor was not inconsistent with truth and fair dealing, and there is no estoppel in the premises upon which defendant may depend.   When the shortage in water occurred, in 1895, it is probable that defendant interfered somewhat with plaintiff's prior appropiation;   but it is not altogether clear that plaintiff is without fault in the matter, and for this reason the costs of the suit ought to be divided.   The decree will therefore be that plaintiff's prior appropriation be established in accordance with this opinion, that he recover his costs in this court upon the appeal, and

that the defendant recover his costs in the court below.

REVERSED.